## FREEMAN *a.* LELAND.

*Supreme Court, First District; Special Term, March,* 1856.

### ARREST.—DEBT FRAUDULENTLY CONTRACTED.

The defendant knowing himself to be insolvent, applied to purchase goods from the plaintiff, and assured him that he, the defendant "was good and able to pay all that he should contract to pay;" and the plaintiff relying on this representation, made the sale desired. *Held,* that the debt was fraudulently contracted, and the defendant liable to arrest in an action brought to recover it.

Motion to discharge a defendant from arrest.

Davies, J.—A motion is made on behalf of the defendant to discharge him from arrest, made by virtue of the order wanted in this cause.

The defendant on application to the plaintiff, December 4, 1855, to purchase of him flour, represented himself as responsible and able to pay for the same, by saying that he was good, and able to pay for all the flour he would contract to buy.

The substance of this representation is not denied. And the question now is was it fraudulent?

Woodruff, Judge, in Wernzer *v.* De Baum, (1 *Smith's Rep.*, 261), says, in reference to similar representations, "These re·presentations were relied upon by the plaintiff. They supposed, and from the representations of the defendant, they had a right to suppose they were parting with their property upon the credit of two responsible names, and the result shows that they had not even one." So in this case it is quite clear to my mind that the plaintiff would not on and after the 4th of December, 1855, have sold the flour to the defendant mentioned in the affidavits, but for the representations made, and the credence he gave to them.

Were they fraudulent, or, in other words, did the defendant know at the time they were made they were not true?

From a careful examination of the papers, I am satisfied that the defendant was involved at the time to a large amount, and that he must have known it. It appears from the account annexed to defendant's affidavit that after the seventh of December, and up to the time of his failure, on the 13th or 14th of that month, he paid on account of debts contracted previous to the first of November in that year, the sum of $5,582 81, and by his assignment he prefers debts due by him, all contracted before that date, amounting to $17,842 50.

It also appears from these accounts that after the fourth of December, up to and including the time of his failure, he paid on account of debts contracted after November 1, 1855, the sum of $8,355 10.

It is therefore manifest that on the fourth of December, 1855, the defendant was at least in debt to the amount of $31,780 41. After the fourth of December, he purchased flour, not paid for, including that from plaintiff, amounting to the sum of $13,657 89.

Brown *a.* Mitchell.

The two sums paid by defendant after December 4th on account of debts created after November 1st, as well as those then contracted, amount to the sum of $13,937 91, about three hundred dollars more than these purchases.

From all these facts, I cannot resist the conclusion that the defendant on the fourth of December was hopelessly insolvent, and that he must have known it, and consequently the representation made to the plaintiff was fraudulent.

The motion to discharge from arrest must therefore be denied.

---

### BROWN *a.* MITCHELL.

*Supreme Court, First District; Special Term, March,* 1856.

#### LEAVE TO ANSWER.—USURY.

The fact that an answer regularly served sets up the defence of usury, is no reason why the court should refuse the defendant leave to amend it in matters independent of that defence.

Motion for leave to serve an amended answer.

DAVIES, J.—This is a motion for leave to serve an amended answer, the original containing a clerical error by using the name of the plaintiff instead of George Bournan, the assignor of the note in suit, and from whom the plaintiff derived title.

Under ordinary circumstances, such a motion would be granted of course.

It is earnestly contended, on the part of the counsel for the plaintiff, that this correction of the defendant's answer should not be permitted, because they set up the defence of usury.

It may be remarked as an answer to the objection thus urged, that the present is not like Bates *v.* Voorhees, (7 *Pr. R.*, 234), and other cases cited. They were cases where the defendant sought leave to *set up* the defence of usury, which the court, for the reasons stated, refused. In the present case that defence is set up or interposed, and the question is, will the court permit the correction of a clerical error? I have no doubt of